UNITED STATES of America, Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants.

No. 88 CIV. 4486(DNE).

United States District Court, S.D. New York.

Nov. 17, 1998.

---

Martha Walfoort, James & Hoffman, P.C., Washington, DC, for defendants.

*OPINION & ORDER*

EDELSTEIN, District Judge.

*BACKGROUND*

This opinion emanates from the voluntary settlement of an action commenced by the United States of America against, *inter alia,* the International Brotherhood of Teamsters ("IBT" or "the union") and the IBT's General Executive Board. The settlement is embodied in the voluntary consent order entered March 14, 1989 ("Consent Decree"). The goals of the Consent Decree are to rid the IBT of the hideous influence of organized crime and establish a culture of democracy within the union. The long history of this case has been set forth in this Court's numerous prior opinions. Accordingly, only those facts necessary for resolving the instant appeal shall be set forth.

This matter is an appeal from the decision of the Election Appeals Master, dated September 25, 1998 (98 Elec.App. 380(KC)) ("EAM Decision"), affirming the decision of the Election Officer, dated September 15, 1998, in Election Office Case Nos. Pr–208–AB–EOH and PR–217–AB–EOH ("EO Decision"). The EO Decision granted two protests filed by David A. Eckstein ("Eckstein") and Richard Dade ("Dade"), respectively, both candidates in the 1996 IBT Rerun Election. The candidates, neither of whom is employed by Anheuser–Busch, claimed that, in violation of Article VIII, § 11(e) of the *Rules for the 1995–1996 IBT International Union Delegate and Officer Election* (the "1996 Election Rules"), Anheuser–Busch,

Inc. ("Anheuser–Busch" or the "Company") refused to allow them to campaign in the Company's employee parking lots. Specifically, Eckstein maintained that he was barred from campaigning at Anheuser–Busch's Budweiser brewery in Newark, New Jersey on August 5, 1998, while Dade claimed that he was prohibited from campaigning at Anheuser–Busch's Baldwinsville, New York facility on August 6, 1998.

Anheuser–Busch admitted that it refused to allow either Eckstein or Dade to campaign in its employee parking lots. EAM Decision at 2. Nevertheless, Anheuser–Busch argued that its refusal to allow them access was justified because the candidates acted inappropriately. In addition, Anheuser–Busch asked that the Election Officer effectively grant the Company an exemption from Article VIII, § 11(e) of the 1996 Election Rules by issuing an order instructing all non-Anheuser-Busch-employee candidates in the IBT Rerun Election to refrain from coming onto the Company's property while Anheuser–Busch is involved in a labor dispute with the IBT regarding new collective bargaining agreements.[1] The Company based this request on its allegation that the IBT had used its access to Anheuser–Busch's parking lots as a "vehicle to stage protests" against Anheuser–Busch with respect to the new agreements. *Id.* at 2–3.

The Election Officer issued a written decision in which he granted both protests and denied Anheuser–Busch's request for·an exemption from Article VIII, § 11(e) of the 1996 Election Rules. EO Decision at 3. In particular, the Election Officer found that the 1996 Election Rules impose upon Anheuser–Busch the burden of proving that § 11(e)'s presumption in favor of parking lot access should not apply. *Id.* at 7 n. 3. Having failed to meet that burden, the Election Officer found that the Company had violated the 1996 Election Rules and directed Anheuser–Busch to permit campaigning in its employee parking lots. *Id.* at 12.

Anheuser–Busch appealed the EO Decision to the Election Appeals Master. The Company contended that the Election Officer erroneously disregarded the standard articulated by the Supreme Court in *Lechmere v. National Labor Relations Board,* 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992). Further, Anheuser–Busch stated that it submitted evidence to the Election Officer showing that IBT candidates had "threatened to act inappropriately" on the company's premises in Jacksonville, Florida, and that IBT candidates had "engaged in non-campaign activities" while on Anheuser–Busch's premises in Bedford, Massachusetts. EAM Decision at 6. Thus, the Company argued that the Election Officer improperly denied its application for an exemption to Article VIII, § 11(e) of the 1996 Election Rules.

By opinion dated September 25, 1998, the Election Appeals Master "affirmed in all respects" the decision of the Election Officer. EAM Decision at 8. The Election Appeals Master found that *Lechmere* was inapposite, and that the Election Officer was correct in rejecting Anheuser–Busch's request for an exemption to Article VIII, § 11(e) of the 1996 Election Rules. *See* EAM Decision at 5–8. Currently before this Court is Anheuser–Busch's appeal of the EAM Decision.

### DISCUSSION

In its appeal to this Court, Anheuser–Busch advances two arguments. First, Anheuser–Busch argues that the Election Officer and the Election Appeals Master erroneously disregarded the standard for permitting union access to the premises of an employer who is not a party to the Consent Decree that the Supreme Court articulated in *Lechmere* by placing the burden on the Company to show why access should be denied. Memorandum of Law in Support of Anheuser–Busch's Appeal of the Election Appeals Master's Decision (98 Elec.App. 380(KC)) ("A–B Br.") at 9. The Company argues that under *Lechmere,* the candidates, not Anheuser–Busch, should

---

**1.** Anheuser–Busch and the IBT are currently engaged in a labor dispute arising out of efforts to reach new collective bargaining agreements. The previous collective bargaining agreements expired on February 28, 1998 and were extended by agreement until March 28, 1998. After reaching an impasse in negotiations, the Company implemented its final offer on September 21, 1998.

bear the burden of proof. *Id.* at 10. Moreover, Anheuser–Busch contends that two Second Circuit decisions, *United States v. IBT ("Yellow Freight")*, 948 F.2d 98, 102 (2d Cir.1991), *vacated with directions to dismiss as moot*, 506 U.S. 802, 113 S.Ct. 31, 121 L.Ed.2d 4 (1992) and *United States v. IBT ("Sikorsky")*, 955 F.2d 171, 174–75 (2d Cir.1993), require the application of *Lechmere* to this case. A–B Br. at 8–9, 13–14. Second, Anheuser–Busch again claims that the Election Officer was remiss in failing to investigate certain alleged incidents on the Company's premises in Jacksonville, Florida and Bedford, Massachusetts and that if a proper inspection had been made, recognition that an exemption to Article VIII, § 11(e) of the 1996 Election Rules would have followed because of the ongoing labor dispute between the Company and the IBT. *Id.* at 19–20.

## A. Standard For Permitting Access To Employers' Premises

■ It is well established that the Consent Decree, and hence, the 1996 Election Rules may be applied to a non-party to the Consent Decree through the All Writs Act so long as such application is made in a manner "agreeable to the usages and principles of law." *Yellow Freight*, 948 F.2d at 103–04 (2d Cir. 1991), (quoting the All Writs Act 28 U.S.C. § 1651(a) (1998)). Essentially, the Consent Decree may be enforced against a non-party pursuant to the All Writs Act "if appropriate procedures are followed and applicable substantive law is observed." *United States v. IBT ("Commercial Carriers")*, 968 F.2d 1472, 1476 (2d Cir.1992).

■ Anheuser–Busch argues that the All Writs Act and the Second Circuit's decisions in *Yellow Freight* and *Sikorsky* require that federal labor law, and in particular the Supreme Court's decision in *Lechmere*, govern the access issue.[2] The Company asserts that under *Lechmere*, a union member seeking access to an employer's parking lot has the burden of establishing that Anheuser–Busch's employees are "isolated from the ordinary flow of information that characterizes our society." A–B Br. at 10 (quoting *Lechmere*, 502 U.S. at 540, 112 S.Ct. 841). Therefore, Anheuser–Busch argues that because the Election Officer and the Election Appeals Master placed the burden upon the Company to demonstrate that access to union members in an employee parking lot is neither necessary nor appropriate to meaningful exercise of democratic rights in the course of this election, the Election Officer and the Election Appeals Master erroneously failed to apply the standard articulated in *Lechmere*. *See* 1996 Election Rules, Art. VIII, § 11(e).

Article VIII, Section 11(e) of the 1996 Election Rules provides in relevant part that:

> [A] candidate for International office and any Union member within the regional area(s) in which said candidate is seeking office may distribute literature and/or otherwise solicit support in connection with such candidacy in any parking lot used by Union members to park their vehicles in connection with their employment in said regional area(s) ... [and] each member of the [IBT] who is employed within the regional area(s) in which said candidate is seeking office has the reciprocal right to receive such literature and/or solicitation of support from such candidate for International office or candidate's advocate.

The forgoing rights are available only in connection with campaigning during the [1996 Election] ... and only during the hours when the parking lot is normally open to employees. The rights guaranteed in this Subsection are not available to an employee on working time, may not be exercised among employees who are on working time and do not extend to campaigning which would materially interfere with the normal business activities of the

---

2. In *Jean Country*, 291 N.L.R.B. 11, 1988 WL 214053 (1988), the National Labor Relations Board held that under Section 7 of the National Labor Relations Act, as amended ("NLRA"), 29 U.S.C. § 157, non-employee access to employer premises for union organizing activity should be determined by balancing the degree of impair-

ment of the statutory right to organize if access were denied against the degree of impairment of the private property right if access were granted. The Supreme Court in *Lechmere*, held that § 7 of the NLRA does not give non-employees a presumptive right to campaign on employer premises.

employer. An employer may require reasonable identification to assure that a person seeking access to an employee parking lot ... is a candidate or other Union member entitled to such access. Nothing in this Subsection shall entitle any candidate or other Union member to access to any other part of premises owned ... by an employer or to access to a parking lot for purposes or under circumstances other than as set forth herein.

The forgoing rights are presumptively available, notwithstanding any employer rule or policy to the contrary, based upon the Election Officer's finding that an absence of such rights would subvert the Consent Order's objectives of ensuring free, honest, fair and informed elections and opening the Union and its membership to democratic processes. Such presumption may be rebutted, however, by demonstrating to the Election Officer that access to Union members in an employee parking lot is neither necessary nor appropriate to meaningful exercise of democratic rights in the course of the [1996 Election]. An employer seeking to deny access to Union members in an employee parking lot may seek relief from the Election Officer at any time.

1996 Election Rules, Article VIII, § 11(e). At the time this Court approved the 1996 Election Rules, this Court carefully analyzed *Lechmere* and expressly rejected its applicability to access determinations under the 1996 Election Rules. *See United States v. IBT ("1996 Election Rules")*, 896 F.Supp. 1349, 1364–67 (S.D.N.Y.1995), *aff'd as modified on other grounds*, 86 F.3d 271 (2d Cir. 1996).

As this Court explained, under the 1991 Election Rules that went into effect prior to *Lechmere*, a rule similar to Article VIII, § 11(e) of the 1996 Election Rules was not included because non-employees were generally assured of access to employer premises

for campaign purposes under the National Labor Relations Act, as amended ("NLRA"), 29 U.S.C. § 157. *Id.* 896 F.Supp. at 1364–65. Responding to the Supreme Court's decision in *Lechmere*, the Election Officer proposed including in the 1996 Election Rules a basis, independent of the NLRA, for an IBT member's limited right of access to employer premises. *Id.* 896 F.Supp. at 1365. In rejecting an argument that the Pepsi–Cola Company raised, this Court determined that *Lechmere* did not prohibit the Election Officer's proposed rule regarding the right of access.[3] *Id.*

*Lechmere* only addressed the rights of union members under the NLRA, it did not prohibit the creation of a right of access independent of the NLRA. Because the Consent Decree, through Article VIII, § 11(e) of the 1996 Election Rules, provides an independent basis for IBT members' right of access to employers' premises, *Lechmere* is inapposite, as are the decisions of the Second Circuit in *Yellow Freight* and *Sikorsky*.[4] Therefore, this Court finds that the Election Officer and the Election Appeals Master applied the correct standard under the 1996 Election Rules by placing the burden on Anheuser–Busch to demonstrate that access to employee parking lots was neither necessary nor appropriate.

■ Anheuser–Busch next argues that it offered evidence to the Election Officer that showed that "the protesters behaved inappropriately." A–B Br. at 17–18. Specifically, the Company claimed that Eckstein acted inappropriately because he gained unauthorized entry to the Newark, New Jersey parking lot and that Dade's refusal to leave the parking lot twice required the presence of the police. *Id.* at 18. The Election Officer examined the Company's claims with respect to the candidates and found them to be without merit. EO Decision at 11.

The 1996 Election Rules afforded Eckstein a presumptive right of access to the parking

---

**3.** It should be noted that Anheuser–Busch, unlike the Pepsi–Cola Company, did not challenge the access rule in this Court at that time, despite having notice and an opportunity to do so.

**4.** As the Election Officer correctly concluded, *Yellow Freight* and *Sikorsky* are inapplicable be-

cause "they were decided in the context of the 1991 Election Rules." EO Decision at 11. The 1996 Election Rules provide an entirely different basis for IBT members' limited right of access to employee parking lots.

lot. *See* 1996 Election Rules, Article VIII, § 11(e). The Election Officer, therefore, correctly concluded that Anheuser–Busch failed to sustain its burden because it was not inappropriate for Eckstein to gain access to the parking lot. *Id.* Furthermore, regarding Dade, the Election Officer accurately found that the police presence, that was invoked because Anheuser–Busch refused to acknowledge Dade's right of access to the parking lot, did not demonstrate inappropriate behavior on the part of Dade because he also had a presumptive right to be there. *Id.*

Anheuser–Busch spends considerable time arguing that the Election Officer's decision should be reversed because the Election Officer "provided no indication that he ever attempted to investigate or ascertain the circumstances [underlying the candidates' claims.]" A–B Br. at 18. This argument, however, is without merit because it was Anheuser–Busch's obligation to demonstrate to the Election Officer the necessity of denying access. The Election Officer found that the Company failed to sustain its burden, and this Court sees no reason to reverse that determination.

B. *Exemption to Article VIII, § 11(e)*

■ In addition to the two protests at the center of this case, this appeal also involves the denial of Anheuser–Busch's request for relief in accordance with Article VIII of the Rules. As previously discussed, Article VIII, § 11(e), of the 1996 Election Rules provides IBT members with the presumptive right of access to employee parking lots for campaign purposes. That presumption, however, may be rebutted "by demonstrating to the Election Officer that access to Union members in an employee parking lot is neither necessary nor appropriate to meaningful exercise of democratic rights in the course of the 1995–1996 election." 1996 Election Rules, Article VIII, § 11(e). The Company requested that the Election Officer issue an order instructing all non-Company-employee candidates to refrain from coming onto Anheuser–Busch property while the Company was involved in the current labor dispute with the IBT over the new collective bargaining agreements.

Anheuser–Busch argues that an exemption to Article VIII, § 11(e) of the 1996 Election Rules is necessary because of an ongoing labor dispute between the Company and the IBT. A–B Br. at 19–20. In addition to Anheuser–Busch's allegations of inappropriate behavior by Eckstein and Dade, the Company relies on an alleged threat of inappropriate behavior at the Jacksonville, Florida brewery, and its claim that IBT candidates had "engaged in non-campaign activities" while on its premises in Bedford, Massachusetts. *Id.* at 17.[5]

Whether Anheuser–Busch was justified in denying access to the Jacksonville facility was not presented to the Election Officer and is not an issue before this Court. The alleged incidents in Jacksonville and Bedford were not the subject of a protest, and Anheuser–Busch withdrew its offer to submit evidence to the Election Appeals Master regarding these alleged incidents. Nonetheless, even assuming the Company's descriptions of the alleged incidents are accurate, it does not justify the blanket exemption Anheuser–Busch seeks. As the Election Officer recognized, the

> circumstances of the labor dispute, without more, does not justify a blanket restriction on parking lot access. Such disputes are inherently part of the relationship between union and employers.... An exception to access based on showing merely that a labor dispute exists would swallow the access presumption completely.

EO Decision at 10; *see also* EAM Decision at 8.

The access rule for the 1996 Election cannot be lightly suspended. As this Court emphasized in its decision ordering Labatt Brewing Company Ltd. to grant access to employee parking lots at its facilities, refusal to grant access "endangers the free flow of information between candidates for IBT office and the rank-and-file IBT electorate" and, thereby, "threatens the very purposes that the Government and the IBT intended the Consent Decree to serve." *United States*

---

5. Anheuser–Busch denied access to its employee parking lot in Jacksonville, Florida because an officer of the IBT Local in Jacksonville informed the Company that an IBT candidate intended to visit the parking lot, not solely to campaign, but to encourage union members to reject the Company's most recent contract proposal to the union. *See* Affidavit of Calvin Siemer, Ex. D at 2.

v. IBT ("Labatt"), 945 F.Supp. 609, 623 (S.D.N.Y.1996). In this case, Anheuser–Busch has failed to demonstrate that "access to Union members in an employee parking lot is neither necessary nor appropriate to meaningful exercise of democratic rights in the course of the 1995–1996 election." 1996 Election Rules, Article VIII, § 11(e). Thus, this Court finds that the Election Officer acted well within his broad discretion by not granting Anheuser–Busch an exemption.

### C. Conclusion

For the foregoing reasons, the decision of the Election Appeals Master is Affirmed in all respects.

SO ORDERED.